CIKLIN, J.
 

 In this case we explain the need, at each critical stage of criminal proceedings, to offer a pro se litigant court-appointed counsel and the procedures required when there are grounds to question a criminal defendant’s competency to stand trial. We also explore a defendant’s right to self-representation amid concerns of competency-
 

 Frank Monte was charged with two counts of aggravated stalking and one count of violation of a protective injunction.
 
 [1]
 
 He was tried before a jury on March 10,
 
 2008.
 

 On January 8, 2008, the trial court, on request of defense counsel, appointed an expert to address Monte’s competency to stand trial.
 

 During a January 15, 2008 hearing, the trial court considered Monte’s competency to proceed based on the written evaluation prepared by a single expert appointed by the trial judge but stopped short of making a ruling after defense counsel objected, arguing that the trial court was required to appoint at least two experts to assist with the determination of competency, pursuant to Florida Rule of Criminal Procedure 3.210(b) (2008). Also during this hearing, the trial court granted Monte’s motion to discharge his private attorney because the lawyer was unwilling to adopt Monte’s speedy trial demand. Monte then hired private attorney Michael Gottlieb to represent him.
 

 On January 16 and 18, 2008, the trial court, on its own motion, appointed two more experts to examine Monte. One of the experts found Monte “not competent to proceed” while the other found him “competent to proceed.” The record does not reveal that any additional competency hearing was ever held.
 

 On February 15, 2008, Monte filed a pro se written motion to proceed with standby counsel.
 

 On February 21, 2008, the trial court granted Mr. Gottlieb’s motion to withdraw because Gottlieb could not honor Monte’s request to demand speedy trial. The next day, February 22, 2008, the trial court appointed assistant public defender Brian Greenwald to represent Monte, but Monte declined the representation, reiterating his request for standby counsel and his intention to proceed pro se. On that same day, the trial court conducted a thorough
 
 Faretta
 

 [2]
 

 inquiry and the trial
 
 *1199
 
 court found Monte to have “intelligently and voluntarily” waived his right to counsel, thereby permitting him to proceed pro se. As Monte requested, the public defender was discharged.
 

 On February 28, 2008, a hearing was conducted on Monte’s pro se motion to compel discovery, demand for speedy trial, and pending motion for standby counsel. The trial court took no action on the discovery and speedy trial “issues” because nothing legally substantive had been filed or was otherwise before the court which would have caused the need for any type of ruling. The trial court denied Monte’s motion for standby counsel without prejudice to renew.
 

 At the commencement of the trial, on March 10, 2008, the trial court recognized that it had previously conducted a
 
 Faretta
 
 inquiry on February 22 and as such, determined that there was no need to repeat the procedure. At Monte’s request, the trial court appointed assistant public defender Greenwald to act as standby counsel. After hearing and denying Monte’s motion to suppress, the trial immediately began.
 

 During trial, Monte’s harassment, including threatening phone calls and the carrying of a firearm onto the victim’s business property was detailed. These actions were targeted against one individual, his employees and staff, and his eight businesses. This behavior ultimately led to the issuance of a permanent non-expiring restraining order against Monte which Monte continually violated. Five employees of the victim testified to having received hundreds of telephone calls from Monte, including threats to poison the water and blow up the building in which they worked. The victim denied having done anything to Monte and added that threats and slurs were even directed toward the victim’s daughter. Monte told law enforcement officials that the victim had ties with terrorists and that he was being investigated by the FBI for a possible connection with those who perpetrated the September 11, 2001 attack against America.
 

 On March 12, 2008, the jury returned a verdict of guilty on both charges. On April 28, 2008, at sentencing, the trial court adjudicated Monte guilty and sentenced him to five years in prison on the aggravated stalking count plus 864 consecutive days on the injunction violation charge.
 

 Through the services of the public defender, Monte raises three issues on appeal. First, Monte contends that the trial court erred by not renewing the offer of assistance of counsel at certain critical stages of the proceedings. Second, he asserts that the trial court erred in failing to conduct a competency hearing both before trial and sua sponte during trial, when Monte argues, it should have become reasonably apparent to the trial judge that such a hearing was necessary. Finally, Monte argues that the trial court erred in permitting self-representation without first determining that Monte was competent to make the decision to waive counsel.
 

 Renewal of Offer of Counsel at Critical Stages
 

 A trial court must renew an offer for assistance of counsel to an unrepresented defendant at each critical stage of a trial:
 

 A defendant’s waiver of the right to counsel applies only to the stage of the proceedings during which the waiver is made. “Where the right to counsel has
 

 
 *1200
 
 been properly waived, the State may proceed with the stage in issue; but the waiver applies only to the present stage and must be renewed at each subsequent crucial stage where the defendant is unrepresented.”
 

 Sproule v. State,
 
 719 So.2d 349, 350 (Fla. 4th DCA 1998) (citation omitted);
 
 see also
 
 Fla. R.Crim. P. 3.111(d)(5). A “crucial stage” is “any stage that may significantly affect the outcome of the proceedings.”
 
 Traylor v. State,
 
 596 So.2d 957, 968 (Fla.1992);
 
 see also Segal v. State,
 
 920 So.2d 1279, 1280 (Fla. 4th DCA 2006) (“Although a full
 
 Faretta
 
 inquiry need not be conducted at every stage of criminal proceedings, once counsel has been waived under
 
 Faret-ta,
 
 the offer of assistance of counsel must be renewed by the court at each subsequent stage of the proceedings.”).
 

 Here, a
 
 Faretta
 
 inquiry was made on February 22, 2008. The hearing on Monte’s motion to suppress and the beginning of trial both occurred on March 10, 2008. Sentencing was conducted on April 23, 2008. Monte specifically claims that the trial court erred in not renewing an offer of counsel before the hearing on his motion to suppress, the start of trial, and sentencing.
 

 The need to renew an offer of assistance of counsel is not dependent on the time between an initial offer and a subsequent critical stage, but rather is dependent on whether there are any intervening critical stages. For example, in
 
 Lamb v. State,
 
 535 So.2d 698, 699 (Fla. 1st DCA 1988), an offer of counsel three weeks before trial did not require a renewal where there were no intervening proceedings. The court explained that “[t]he pretrial hearing on the waiver of counsel addressed [defendant’s] competence and ability to appear pro se at the trial stage, and the fact that the trial occurred three weeks later is immaterial. The rule does not place a time limitation on an offer and waiver of counsel.”
 
 Id.
 
 However, if between the initial offer of counsel and trial there are other critical stages, it would be error to not renew the offer of counsel before trial.
 
 See Sproule,
 
 719 So.2d at 351 (“[U]nlike
 
 Lamb,
 
 where there were no intervening proceedings during the three weeks that passed between the pretrial hearing and trial, here, the record indicates two other appearances before the court where the offer was not renewed.”).
 

 After the
 
 Faretta
 
 inquiry took place on February 22, 2008 and before the March 10, 2008 trial (and hearing on the motion to suppress on the morning of the trial), there was a hearing on February 28, 2008. At this February 28 court appearance, the trial court discussed Monte’s motion to compel discovery, a demand for speedy trial, and a motion for standby counsel. While this February 28 court appearance can certainly be categorized as an intervening proceeding, the record indicates that nothing of legal substance existed regarding any discovery and speedy trial matters. Further, the trial court made it clear to Monte that the issue of standby counsel would be revisited at the March 10 trial.
 

 At the commencement of court proceedings on March 10 one of the first things discussed was Monte’s self-representation. Monte indicated that he was “still prepared to go pro se with standby counsel.” After a brief colloquy, the trial court permitted Monte to represent himself, explaining that:
 

 I have already conducted a
 
 Faretta
 
 inquiry as of February 22, 2008.... [T]he court finds that none of the facts have changed which would require another
 
 Faretta
 
 inquiry, that was done February 22, 2008. I do find that the defendant is able to go forward and represent himself having intelligently and voluntarily waived his right to counsel.
 

 
 *1201
 
 Monte’s comments indicated his knowing intention to represent himself and his intelligent understanding of proceeding pro se.
 
 [3]
 
 Conducting another
 
 Faretta
 
 inquiry or renewing an offer of counsel at this juncture would have been superfluous and legally unnecessary. See
 
 Knight v. State,
 
 770 So.2d 663, 670 n. 6 (Fla.2000) (“A defendant’s right to have court-appointed counsel discharged and right to represent himself becomes meaningless and a source of gamesmanship if the trial court has to offer counsel to the defendant each time he appears in court.”). In addition, Monte was, as he requested, appointed standby counsel. “Standby counsel is a constant reminder to a self-representing defendant of his right to court-appointed counsel at any stage of the proceeding.”
 
 Id.
 
 at 670. Therefore, a renewal of an offer of counsel was not required in this situation.
 

 The trial ended on March 12, 2008 and sentencing was conducted on April 23, 2008. Prior to sentencing, the trial court did not renew an offer of counsel.
 

 “Sentencing is a critical stage of a criminal proceeding, and a trial court must renew the offer of counsel even if the defendant has previously waived counsel.”
 
 Beard v. State,
 
 751 So.2d 61, 62 (Fla. 2d DCA 1999). “[E]ven if a defendant does not request appointment of counsel, this omission is not considered a knowing waiver of the right to counsel” before sentencing.
 
 Hardy v. State,
 
 655 So.2d 1245, 1248 (Fla. 5th DCA 1995).
 

 The trial court erred in failing to renew an offer of counsel before Monte’s sentencing.
 
 See Kepner v. State,
 
 911 So.2d 1256, 1258 (Fla. 4th DCA 2005) (“[T]he court’s failure to renew the offer of counsel prior to sentencing was error requiring reversal and resentencing.”);
 
 Bowman v. State,
 
 550 So.2d 544, 544 (Fla. 4th DCA 1989) (“[W]e reverse appellant’s sentence since it was error not to renew the offer of assistance of counsel to him at sentencing.”);
 
 Morgan v. State,
 
 504 So.2d 504, 505 (Fla. 4th DCA 1987) (finding the trial court erred in failing to renew the offer of assistance of counsel prior to the defendant’s final probation revocation hearing).
 

 Not only was renewal of an offer of counsel necessary at this critical stage, but we believe it is worth noting that there was no indication made on the record that Monte was accompanied by his standby counsel at sentencing.
 
 [4]
 

 Cf. McCarthy v. State,
 
 731 So.2d 778, 781 (Fla. 4th DCA 1999) (“Here, the trial court appointed standby counsel ... who was available to the defendant for consultation for much of
 
 *1202
 
 the trial and at the sentencing hearing. The court offered [defendant] the opportunity to consult with [standby counsel] before the sentencing hearing began and again after the state had argued.”).
 

 The trial court erred in not renewing an offer of counsel to Monte before the sentencing hearing began. We therefore reverse and remand for the trial court to conduct a new sentencing hearing that includes an offer of counsel prior to the hearing. Should Monte decline the court’s offer, the court shall make an additional inquiry in accordance with
 
 Faretta.
 

 Competency Proceedings
 

 On January 8, 2008, the trial court, on request of counsel, appointed an expert to address Monte’s competency. A licensed psychologist evaluated Monte on January 11, 2008 and found him “competent to proceed.” A hearing occurred on January 15, 2008 regarding Monte’s competency and the trial court indicated that it believed that Monte was competent to proceed based on this single psychological evaluation. Monte’s defense attorney, however, challenged the trial court’s decision, arguing that a minimum of two (but no more than three) experts were required to assist the court as to a determination of competency, pursuant to Florida Rule of Criminal Procedure 3.210(a), (b) (2008).
 

 On January 16 and 18, 2008, the trial court sua sponte appointed two more experts to conduct competency examinations. One of the two additional licensed psychologists found Monte “not competent to proceed,” while the other found him “competent to proceed.”
 

 “Generally ... the trial court has no independent obligation to hold a competency hearing if there is nothing to alert the court that the defendant may lack competency.”
 
 Blackmon v. State,
 
 32 So.3d 148, 150 (Fla. 4th DCA 2010). Once the court finds that it has a “reasonable ground to believe that [the] defendant is not mentally competent to proceed, the court shall immediately enter an order setting a time for a hearing to determine the defendant’s mental condition.”
 
 Cochran v. State,
 
 925 So.2d 370, 371 (Fla. 5th DCA 2006).
 

 Here sufficient grounds existed to question Monte’s competency to stand trial. The initial competency determination was requested by defense counsel. Additionally, one of Monte’s previous attorneys adamantly told the trial court, “I’ve never seen a client less competent.” However, while the trial court did enter orders causing Monte to be examined by three different experts, the mandatory subsequent competency hearing never occurred.
 

 And, once a trial court has reasonable grounds to believe that a criminal defendant is not competent to proceed, it has no choice but to conduct a competency hearing.
 
 See Mairena v. State,
 
 6 So.3d 80, 85 (Fla. 5th DCA 2009) (“If defense counsel, the state, or the trial court has reasonable grounds to suggest that a defendant is not mentally competent to proceed, the court must conduct a competency hearing.”); Carr
 
 ion v. State,
 
 859 So.2d 563, 565 (Fla. 5th DCA 2003) (“There does not appear to be any discretion on the part of the trial court once it makes the determination that there are reasonable grounds to believe that the defendant is not mentally competent. If the trial judge has reasonable grounds to believe that a criminal defendant is not competent to proceed, then the court must conduct a competency hearing.”).
 

 During the competency hearing, “[t]he experts preparing the reports may be called by either party or the court, and additional evidence may be introduced by either party. The experts appointed by the court shall be deemed court witnesses whether called by the court or either party and may be examined as such by either
 
 *1203
 
 party.” Fla. R.Crim. P. 3.212(a). In this case, no such opportunities were provided.
 

 Generally, the failure to conduct a competency hearing requires reversal and remand for retrial after a determination of competency is made.
 
 See Tingle v. State,
 
 536 So.2d 202, 204 (Fla.1988).
 

 However, in this matter, a retroactive determination of competency may be possible and legally permissible because three pre-trial psychological evaluations have in fact already been performed and the records associated with those evaluations may remain available for review and consideration. This is in line with the holding of the Florida Supreme Court in
 
 Mason v. State,
 
 489 So.2d 734, 737 (Fla.1986):
 

 In spite of the problems involved in conducting a nunc pro tunc competency evaluation ..., we find that under these circumstances the “court may find that there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing.” The experts here will not have to rely upon a cold record or recent examination of the appellant, and the chances are therefore decreased that such a nunc pro tunc evaluation will be unduly speculative.
 

 ... [N]o per se rule exists in Florida forbidding a nunc pro tunc competency determination regardless of the surrounding circumstances.
 

 (citations omitted).
 
 [5]
 
 The fact that the experts who evaluated Monte and the records from their evaluations may still be available, allows this court to remand for a retroactive competency hearing and not a new trial.
 
 See Brown v. State,
 
 449 So.2d 417, 417 (Fla. 3d DCA 1984) (remanding for nunc pro tunc evaluation when original experts were available to testify). If, however, those experts and their full and complete records are not available or appellant’s competency cannot be sufficiently established retrospectively, the trial court is left with no other alternative but to conduct a new trial.
 

 We, therefore, reverse and remand for the trial court to conduct a nunc pro tunc competency hearing if the experts who evaluated Monte and their reports are available. If not available — or if Monte’s competency to stand trial cannot be retroactively determined — the trial court shall afford Monte a new trial.
 

 The Right of Self-Representation Amid Concerns of Competency
 

 Finally, Monte argues that the trial court reversibly erred in allowing him to represent himself without first determin
 
 *1204
 
 ing whether he was competent to make the decision to waive counsel and thereafter competent to represent himself.
 

 The “standard for determining competency to waive the right to an attorney is the same as the standard for determining competency to stand trial.”
 
 Muhammad v. Sec’y, Dep’t of
 
 Corr., 554 F.3d 949, 956 (11th Cir.2009) (citing
 
 Godinez v. Moran,
 
 509 U.S. 389, 396-97, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). Thus, if the trial court is able to retroactively determine that Monte was competent to stand trial, this determination would also suffice to support the trial court’s earlier presumption of competence during its
 
 Faretta
 
 inquiry that occurred only a few weeks before trial.
 
 See Muhammad v. State,
 
 494 So.2d 969, 974-75 (Fla.1986) (finding that a separate competency hearing was not required prior to a
 
 Faretta
 
 inquiry where the trial court had already found defendant competent to stand trial less than a month before the
 
 Faretta
 
 hearing).
 

 Monte also argues that in light of
 
 Indiana v. Edwards,
 
 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), the trial court should not have permitted him to waive his right to counsel because he was suffering from a mental illness to the point that he was not competent to conduct trial proceedings by himself.
 
 Edwards,
 
 however, only permits states to limit a defendant’s right to self-representation. The decision does not grant any substantive rights to defendants.
 

 The Florida Supreme Court has amended the Florida Rules of Criminal Procedure to require that a trial court deny a defendant’s request to represent himself or herself if the defendant suffers “from severe mental illness to the point where the defendant is not competent to conduct trial proceedings by his or her self.” Fla. R.Crim. P. 3.111(d)(3). These changes, however, became effective on August 27, 2009, long after Monte’s trial.
 
 In re Amendments to Florida Rule of Criminal Procedure 3.111,
 
 17 So.3d 272 (Fla.2009). We decline to apply the 2009 amendment to rule 3.111(d)(3) retroactively-
 

 Reversed and remanded with instructions.
 

 TAYLOR, J., and BLANC, PETER D., Associate Judge, concur.
 

 [1]
 

 . The second count of aggravated stalking was nolle pressed prior to trial.
 

 [2]
 

 . A
 
 Faretta
 
 inquiry is one where a judge determines whether a litigant is voluntarily, knowingly, and intelligently waiving his or
 
 *1199
 
 her right to counsel.
 
 See Faretta v. California,
 
 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
 

 [3]
 

 . The following discussion took place:
 

 COURT: The — Brian [public defender Green-wald], tell me when the
 
 Faretta
 
 hearing was.
 

 MONTE: We're going to go through the
 
 Far-etta
 
 hearing again?
 

 COURT: Mr. Monte, I can handle these proceedings. Just wait until I proceed.
 

 MONTE: Okay.
 

 COURT: Mr. Monte, are you asking me to discharge the public defender’s office in as much as they are not adopting your demand for speedy trial; is that what you’re asking me to do, sir?
 

 MONTE: That seems to be the on-going saga.
 

 COURT: Is that a yes, Mr. Monte? Let's try using yes and no.
 

 MONTE: Yes.
 

 COURT: Is that a yes?
 

 MONTE: Yes.
 

 COURT: Okay. The Court is dis — Mr. Greenwald?
 

 GREENWALD: Yes, Judge?
 

 COURT: The court is discharging the public defender's office. I'm appointing you as standby counsel, we are going to be going today.
 

 [4]
 

 . This is in stark contrast to the trial court’s previous and dutiful on-the-record notations indicating that standby counsel was present in the courtroom. Prior to the sentencing portion of the trial, the trial judge even went so far as to note for the record each time when Monte was engaged in private discussions with his standby counsel.
 

 [5]
 

 . We are aware that the First District Court of Appeal has questioned whether the Florida Supreme Court has subsequently overruled its
 
 Mason
 
 holding that “no per se rule exists in Florida forbidding a nunc pro tunc competency determination regardless of the circumstances.”
 
 See Rogers v. State,
 
 16 So.3d 928, 931 n. 5 (Fla. 1st DCA 2009). The First District based its doubt on a comment made by Justice Pariente in a footnote to her concurring opinion in
 
 Tennis v. State,
 
 997 So.2d 375 (Fla.2008). Justice Pariente noted that the competency hearing held in that particular case after the guilt phase of the trial was not relevant in establishing if the defendant had been competent to stand trial “because a determination of competency cannot be retroactive.”
 
 Id.
 
 at 381 n. 7 (Pariente, J., concurring) (citing
 
 Tingle v. State,
 
 536 So.2d 202, 204 (Fla.1988)). We believe, however, that in citing to
 
 Tingle,
 
 Justice Pariente was only referring to the general rule as applied to the facts in
 
 Tennis. See Tingle,
 
 536 So.2d at 204 ("[A] hearing to determine whether a defendant was competent at the time he was tried
 
 generally
 
 cannot be held retroactively.”) (emphasis added). The use of the word "generally” by the supreme court in
 
 Tingle
 
 implies that there are exceptions. Thus,
 
 Tingle,
 
 if anything, affirmed the existence of the exception the Florida Supreme Court had previously explained in
 
 Mason.