DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JORGE CASTILLO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1452

[April 18, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Elizabeth Scherer, Judge; L.T. Case No. 13007022 CF10A.

Jonathan Smulevich and Ronald S. Lowy of Lowy and Cook, P.A., Miami, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, C.J.

The defendant raises several arguments following his open guilty plea to multiple counts arising from his multimillion dollar enterprise of trafficking contraband prescription drugs. Based on the state's concession of error on two of the defendant's arguments, we reverse the defendant's conviction on one count, and remand for resentencing on another count. On the defendant's remaining arguments relating to his alleged lack of competency to enter the plea, we affirm. We write primarily to address the competency arguments.

### *Procedural History*

A nine-count information charged the defendant and five others with several crimes. The defendant was charged in eight of the nine counts: trafficking in contraband drugs (count one), conspiracy to traffic contraband prescription drugs (count two), organized scheme to defraud (count three), and five counts of money laundering (counts five through nine). The defendant was not charged in count four.

## 1. *The Plea Colloquy*

The defendant entered an open guilty plea to the eight counts with which he was charged. During the circuit court's plea colloquy, the following exchange occurred:

> COURT: Are you currently under the influence of any alcohol, drugs, or prescription medication?
>
> DEFENDANT: Yes.
>
> COURT: Okay. What do you take, sir?
>
> DEFENDANT: I'm taking a prescription for my mental health for brain contusions. . . .
>
> COURT: . . . Have you been diagnosed with a mental illness?
>
> DEFENDANT: I have an accident in 2011 where I hit my head . . . . After that, I was in a coma. And a lot of problems come after that to me.
>
> COURT: Okay. Has a doctor diagnosed you with something specific?
>
> DEFENDANT: . . . I have depression, I been having a lot of problems. I been seeing a psychologist, a psychiatrist.
>
> . . . .
>
> COURT: How do you feel today?
>
> . . . .
>
> DEFENDANT: Since I have the accident, I have a lot of problems. I get confused. I need to see my doctor about it. I no see my doctor for three years, my neurologist.
>
> . . . .
>
> COURT: Okay. What I'm trying to figure out is if you can make an intelligent and knowing waiver of your rights. And based upon your answers, I can't make that finding because I

2

don't understand your answers. So the question is how do you feel today?

DEFENDANT: Feel fine.

COURT: Okay. Are any symptoms of mental illness, any of your depression or any of those symptoms affecting you today?

DEFENDANT: No.

COURT: . . . Is your medication controlling your symptoms?

DEFENDANT: Yes.

COURT: And are you able to communicate with your lawyer?

DEFENDANT: Yes.

COURT: Are you able to understand me when I speak to you?

DEFENDANT: Yes.

COURT: And any trouble concentrating?

DEFENDANT: A lot.

. . . .

COURT: Okay. So what is the trouble, sir?

. . . .

DEFENDANT: I don't function the same as before. I have a lot of seizures all the time, every day, several times a day.

. . . .

DEFENSE COUNSEL: Do you understand what's going on now?

DEFENDANT: Yes, I do.

DEFENSE COUNSEL: Do you understand the judge?

3

DEFENDANT:  Yes, I understand.

. . . .

COURT:  Have you had a seizure today?

DEFENDANT:  Not that I know of.  No, I'm fine.

. . . .

COURT (to defense counsel):  Do you have any issues about his competency?

DEFENSE COUNSEL:  Not today, no.  I think he understands fully what's going on today.

COURT:  Sir, I need you to pay attention to my questions and answer my questions specifically.  Not about what happened in the past but about today.  Are you having any trouble following along today?

DEFENDANT:  No.

COURT:  Are you having any trouble concentrating today?

DEFENDANT:  No.

COURT:  Are you taking your medication as prescribed by your doctor?

DEFENDANT:  Yes.

COURT:  And is the medication working for all that you know?

DEFENDANT:  Yes.

The court proceeded to explain the remainder of a standard plea colloquy, and for each explanation, the defendant indicated he understood the plea and its consequences.  The court then accepted the defendant's guilty pleas as knowingly, intelligently, and voluntarily entered.

### 2. *The Sentencing Hearing*

At the sentencing hearing, the defendant moved for a downward departure, primarily pursuant to section 921.0026(2)(d), Florida Statutes (2015) ("The defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment."). In support, the defendant presented the testimony of the neurologist who treated him for thirteen months after his injury in 2011. In the first few months after the injury, the defendant was confused and not acting normally. During later visits, the defendant was having difficulty with cognition and concentration. Over the next several months, the defendant's condition did not improve. According to the neurologist, the defendant "acted almost like a lobotomized patient. He was passive, confused, forgetting things. Just walked like a robot." The neurologist testified that the defendant needed regular neurological visits and regular psychiatric medications for his behavior. When defense counsel asked the neurologist if the defendant was capable of repeating the behavior underlying the charged crimes, the neurologist responded, "Well, certainly, at the time, thirteen month period I last saw him, from late 2011 to the end of 2012, absolutely not. He was simple, confused. He was not able to do anything sophisticated. He was very impaired neurologically, incompetent."

In response to the neurologist's testimony, the state presented several witnesses. A Department of Corrections senior physician testified that he had reviewed the defendant's medical records, and did not see any medical requirement which could not be addressed by the Department's health care system. One of the law enforcement officers who investigated the defendant's crimes testified that the defendant's contraband prescription drug enterprise generated $28 million before the defendant's injury, and another $15 million after the injury. Another law enforcement officer testified that he interviewed the defendant for several hours after the defendant was arrested, and the defendant did not appear confused, but instead was clear as to the facts about the crimes. Finally, the defendant's ex-wife testified that although the defendant had some physical effects from his injury, he stopped going to doctor visits, and continued with his crimes, including an attempt to expand his enterprise into Puerto Rico.

During closing arguments, defense counsel relied on the neurologist's testimony about having treated the defendant. The state relied upon its witnesses' testimony that the defendant's criminal conduct continued well after the defendant recovered from his injury.

The circuit court denied the defendant's motion for downward departure. The court recognized that although it could depart from the minimum guidelines sentence, the court found it should not depart,

5

mentioning that the defendant had not seen the neurologist for three years and that his crimes occurred both before and after his injury.

The court then adjudicated the defendant guilty, and sentenced the defendant to twenty-five years in prison, on each of counts one through nine, to run concurrent with each other. The court rendered this decision even though the defendant was not charged in count four, and even though a twenty-five year sentence exceeded the defendant's maximum possible sentence on count two.

## *The Appeal*

This appeal followed. The defendant raises four arguments, none of which was argued to the circuit court: (1) he was improperly convicted and sentenced on count four when he was not charged in count four; (2) he was given an illegal sentence on count two; (3) the circuit court erred in failing to conduct a competency hearing; and (4) the defendant's plea was not voluntary because he was incompetent at the time of the plea.

### 1. *The Defendant's First Two Arguments*

On the defendant's first argument, the state properly concedes that the defendant was improperly convicted and sentenced on count four when he was not charged in count four. *See Jaimes v. State,* 51 So. 3d 445, 448 (Fla. 2010) ("It is a fundamental principle of due process that a defendant may not be convicted of a crime that has not been charged by the state."); *Powell v. State,* 174 So. 3d 498 (Fla. 4th DCA 2015) ("A conviction of an uncharged crime can be raised at any time as it is a denial of due process."). Therefore, we reverse the defendant's conviction on count four, and remand for the circuit court to correct the judgment by vacating the defendant's conviction and sentence on count four.

On the defendant's second argument, the state properly concedes that the defendant was given an illegal sentence on count two. Count two charged the defendant with conspiracy to traffic in contraband prescription drugs, a second degree felony. Under section 775.082(3)(d), Florida Statutes (2013), the maximum sentence for a second degree felony is fifteen years. However, the defendant's lowest permissible sentence under the code was 237.45 months, or 19.78 years, and under section 921.0024(2), Florida Statutes, (2013), "[i]f the lowest permissible sentence under the code exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the code must be imposed." The twenty-five year sentence on count two exceeded the sentence required by the code of 237.45 months, or 19.78 years. Therefore, we reverse the

sentence on count two, and remand for the circuit court to impose the correct sentence required by the code of 237.45 months, or 19.78 years, on count two.

## 2. *The Defendant's Third and Fourth Arguments*

We conclude the defendant's third and fourth arguments, that the circuit court erred in failing to conduct a competency hearing, and that the defendant's plea was not voluntary, lack merit. We first address our jurisdiction before turning to the merits.

### a. *Jurisdiction*

In *Dortch v. State*, ___ So. 3d ____ (Fla. 4th DCA April 11, 2018), we recently held:

> [T]o raise the issue of a failure to comply with Florida Rules of Criminal Procedure 3.210-212 on direct appeal, it is not necessary that a defendant first file a motion to withdraw plea under Florida Rule of Appellate Procedure 9.140(2)(A) in cases *where the trial court has reasonable grounds to believe the defendant is incompetent* and has ordered an examination. Indeed, the rules mandate a hearing and an order under such circumstances. This is true regardless of whether the defendant has previously been declared incompetent. *This mandate does not apply however if the trial court had no reasonable grounds to believe the defendant is incompetent.*
>
> To require a criminal defendant, who may be incompetent, to file a motion to withdraw a plea before raising the issue on appeal is unwarranted. If a defendant is incompetent, confining him to post-conviction relief, without the assistance of counsel, is not a remedy designed to do justice.

___ So. 3d at ___ (emphasis added; footnote omitted). *Dortch* receded from previous cases in which we held, for example, that "[a]lthough a trial court's failure to order a competency hearing on its own motion when it reasonably appears necessary constitutes an abuse of discretion, we do not deem such error 'fundamental' so as to obviate the need for filing a motion to withdraw in the trial court before attacking the voluntariness of the plea on appeal." *Burns v. State*, 884 So. 2d 1010, 1014 (Fla. 4th DCA 2004) (footnote omitted). Thus, even though the defendant did not raise this issue to the circuit court by objection or by the filing of a motion to

withdraw his plea, we have jurisdiction to consider the defendant's arguments.

### b. _Merits_

We now consider the merits of the defendant's arguments. As we indicated in _Dortch,_ the test of whether a court errs in not conducting a competency hearing turns on whether the court, at a material stage of the proceeding, had a reasonable ground to believe the defendant was not mentally competent to proceed. This test arises from the plain language of Florida Rule of Criminal Procedure 3.210(b):

> If, at any material stage of a criminal proceeding, the court . . . _has a reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition,_ which shall be held no later than 20 days after the date of the filing of the motion, and may order the defendant to be examined by no more than 3 experts, as needed, prior to the date of the hearing.

Fla. R. Crim. P. 3.210(b) (emphasis added). A "material stage of the proceeding" includes "entry of a plea" and "sentencing." Fla. R. Crim. P. 3.210(a)(1). The test for whether a defendant is competent is "whether [the defendant] has sufficient present ability to consult with [the defendant's] lawyer with a reasonable degree of rational understanding – and whether [the defendant] has a rational as well as factual understanding of the proceedings against [the defendant]." _Peede v. State,_ 955 So. 2d 480, 488 (Fla. 2007).

We review the circuit court's decision not to hold a competency hearing for an abuse of discretion. _See Kelly v. State,_ 797 So. 2d 1278, 1280 (Fla. 4th DCA 2001) (the "standard of review of a trial court's decision regarding whether to hold a competency hearing is abuse of discretion"). Further, "a trial court does not err when it does not conduct an inquiry concerning the defendant's mental competency . . . where no showing of mental incompetency was made and no request by the defendant for such an inquiry was made." _Campo v. State,_ 24 So. 3d 735, 736 (Fla. 3d DCA 2009).

Here, we find no abuse of discretion. Our review of the record indicates the circuit court did not have a reasonable ground to believe the defendant was incompetent before accepting the defendant's plea or sentencing the

defendant. We would go further to say that competent substantial evidence existed that the defendant was competent at both stages.

At no time did the defendant's counsel request a competency hearing or even suggest that the defendant was incompetent. After the plea colloquy revealed that the defendant suffered a brain injury four years before entering the plea, the court thoroughly inquired whether that injury was affecting the defendant's ability to understand the plea and its consequences. Although the defendant initially confused the inquiry by referring to his condition immediately after the injury, the defendant ultimately testified he understood the plea and its consequences when the court focused the defendant on his ability to understand everything at the time of the plea. When the court asked defense counsel whether defense counsel had any issues about the defendant's competency, defense counsel candidly answered, "Not today, no. I think he understands fully what's going on today." *Cf. Burns*, 884 So. 2d at 1014 n.1 ("Even if we were to pass on the merits of this case, we would be hard pressed to find an abuse of discretion where defense counsel advised the court that the defendant's competency was not an issue and assured the court that the defendant's ability to understand the proceedings had actually improved since the earlier court proceedings when he was found competent to proceed.").

The defendant's reliance on his neurologist's testimony, presented at the sentencing hearing in pursuit of a downward departure sentence, is unavailing as an attempt to show that the court had a reasonable ground to believe the defendant was incompetent before the court accepted the defendant's plea, or when the court sentenced the defendant. We recognize the neurologist used certain comparisons to discuss the defendant's condition *in the months after the defendant's injury* – the defendant "acted almost like a lobotomized patient. He was passive, confused, forgetting things. Just walked like a robot." We also recognize that the neurologist used the word "incompetent," when testifying that the defendant "was simple, confused. He was not able to do anything sophisticated. He was very impaired neurologically, incompetent." However, the neurologist expressly testified that his observations were limited to the months immediately after the defendant's injury, and that he had not treated the defendant in the three years before the defendant's plea.

Moreover, even if we were to accept the neurologist's testimony about the defendant's condition in the months after the defendant's injury, the state's evidence about the defendant's condition in the years leading up to the plea and sentencing rebutted the defendant's claim on appeal that he

was incompetent at the time of the plea or sentencing. One of the law enforcement officers who investigated the defendant's crimes testified that the defendant's contraband prescription drug enterprise generated $28 million before the defendant's injury, and another $15 million after the injury. Another law enforcement officer testified that he interviewed the defendant for several hours after the defendant was arrested, and the defendant did not appear confused, but instead was clear as to the facts about the crimes. Finally, the defendant's ex-wife testified that although the defendant had some physical effects from his injury, he stopped going to doctor visits, and continued with his crimes, including an attempt to expand his enterprise into Puerto Rico.

We do not accept the defendant's oral argument that the mere fact the neurologist used the word "incompetent" during his testimony at the sentencing hearing should have been a per se basis for the circuit court to have found that it had a reasonable ground to believe the defendant was incompetent at the time of the plea or sentencing. Again, the neurologist's testimony was limited to describing the defendant's condition in the months after the defendant's injury, not in the later three years leading up to the plea or at the time of the plea or sentencing. Also, it appears from the face of the neurologist's testimony that his use of the term "incompetent" was not intended to describe the defendant's ability to enter a knowing, intelligent, and voluntary plea in a legal context. Rather, the neurologist merely was trying to convey the defendant's capabilities after the injury in a medical context. As such, the mere fact the neurologist used the word "incompetent" during his testimony did not provide a reasonable ground to believe that the defendant was not mentally competent to proceed at the time of the plea or sentencing.

### *Conclusion*

Based on the foregoing, we reverse the defendant's conviction and sentence on count four and remand for correction of the judgment on count four, and reverse the defendant's sentence on count two, and remand for the circuit court to impose the correct sentence required by the code of 237.45 months, or 19.78 years, on count two. Appellant need not be present for either action. *See, e.g.*, *Dougherty v. State*, 785 So. 2d 1221, 1223 (Fla. 4th DCA 2001) ("The imposition of a sentence is a crucial stage at which the defendant is entitled to be present. . . . An exception is made in resentencing cases where all that is required on remand is a ministerial act of sentence correction."). We affirm the defendant's remaining convictions and sentences.

*Affirmed in part, reversed in part, and remanded for correction of judgment on count four and correction of sentence on count two.*

M*AY* and D*AMOORGIAN*, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**