DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HIRAM GONZALEZ MORALES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1376

[June 27, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 502014CF003537AXXXMB.

Carey Haughwout, Public Defender, and Mara C. Herbert, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

In this appeal from his conviction and sentence for second degree murder, appellant, Hiram Gonzalez Morales, contends that the court erred in denying his "Stand Your Ground" defense, as well as erred in denying his motion for judgment of acquittal at his trial. After reviewing the evidence, we conclude that the court did not err in either respect. We therefore affirm the judgment and sentence.

The State alleged that Morales had shot and killed Crestony Colin in February 2014, in rural Palm Beach County, and on the next day, he disposed of the body by placing it in Colin's rental car and setting the car on fire in rural Broward County. Morales filed a motion to dismiss based on section 776.032, Florida Statutes, the "Stand Your Ground Law." Section 776.032(1), Florida Statutes (2014), provides:

A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013 or s. 776.031 is justified in such conduct and is immune from criminal prosecution and civil action for

> the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened . . . .

The self-defense statute, section 776.012(2), Florida Statutes (2014), provides:

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself . . . .

Morales contended that he had shot Colin in self-defense because he feared for his life. At the hearing on the "Stand Your Ground" defense, Morales testified that Colin had contacted him and asked him to run errands with him because Colin didn't have a valid driver's license. Morales drove, and Colin asked him to head towards western Palm Beach County to a remote location. When Morales stopped at a stop sign, Colin put a gun to his temple and said that he wanted money. Morales said he pushed Colin's hand down and told him to stop messing around. Colin brought the gun back up a second time, pointing it at Morales and screaming that he was serious and wanted $2000, as he knew Morales had received a large sum in a social security settlement. Colin had given Morales drugs in the past and now wanted payment. Morales testified he told Colin to stop messing around, hit Colin's hand down, and grabbed his wrist with the gun. Morales twisted Colin's hand with the gun towards Colin. Colin turned away towards the passenger door and the gun went off, killing Colin. During his testimony, Morales demonstrated to the court how he wrestled with the gun. Unfortunately, the record does not show the exact motions that Morales used.

Morales started driving, and when one of Colin's two phones started to ring, Morales threw them out the window and kept driving. He drove to his mother's home and called his brother, telling him he had an emergency. When the brother arrived, Morales told him he had shot the victim. The brother helped him put the body in the trunk of the victim's rental car and went home.

Around 5:00 a.m. the next morning, Morales called his brother and asked him to help him get rid of the car. Morales drove the victim's car, with the brother driving Morales's car behind him, to western Broward County. There, he parked the rental car, got gas from the trunk of his car, and set the victim's car on fire with the body in it. In the process he burned

2

the calves of his legs. Afterward, he drove back to his mother's house. He threw the gun away in a dumpster.

Several days later, police executed a search warrant at his home. Morales went to the police station and told a detective in a statement that Colin was his drug dealer. Police indicated that they had phone records which showed his and the victim's phones were together. Morales denied that their phones were together and denied that he had killed Colin. He did not mention that he had shot Colin in self-defense. When the detective talked about shackling Morales, they realized he had severe burns on his legs. He told them that he had been burned at the park using lighter fluid on charcoal.

A forensic consulting and ballistics expert testified for the defense at the hearing on the motion to dismiss. The expert had reviewed the crime scene photos, autopsy photos, and investigative reports pertaining to bullet trajectory. He determined that there was an entrance wound at the center of the back of Colin's skull with a slight upward angle to the trajectory. The projectile ended up in the skull in the frontal lobe area, high up on the forehead. At the time the firearm was discharged, either the firearm was tilted in an upward position or the victim's head was tilted downward. He could not rule out self-defense as a possibility. He was, however, able to rule out an execution-style killing, where a person is on his or her knees.

On cross-examination, the State brought out that the wound was directly in the back of the head, almost square in the middle, with an upward trajectory. Thus, either the gun was below the skull, pointing upward, or the victim's skull was turned downward with the gun in a downward position. The prosecutor performed a demonstration with the expert, but the record is unclear of exactly what the demonstration showed.

The court denied the motion to dismiss on the following grounds:

> Court: I heard the defendant's testimony, so that's all fine, and well. . . . But based on the testimony of the defendant and this struggle, and it's not going to be articulated on the record where he says he bent his hand back, it seems to this Court that it would be absolutely physically impossible for the gun to loop back around his neck and shoot him in the fashion that has been described.

3

So really, this is the first stand the ground motion I've ever had where I didn't require the State to put on witnesses to refute it, but I am not even remotely near being convinced by a preponderance that this was a case of stand your ground. The motion is denied.

Morales filed a petition for writ of prohibition with this court, but we denied it without prejudice to raising the Stand Your Ground issue on appeal.

At trial, the State called Morales's brother, who related that Colin was their drug dealer and had threatened their family in the past on two different occasions. On one occasion, Colin was looking for Morales to receive payment for drugs, but Morales was not home. Colin was angry, took a swing at the brother, pushed past Morales's mother, and messed up the home. On another occasion, Colin came into the house with a gun, again looking for Morales.

On the day of the incident, after the brother had gotten the call from Morales and came to his mother's house, he saw Colin's body in the trunk of a car. He was in shock. He asked Morales if he did it, and Morales nodded yes. He then asked Morales where he did it, and Morales raised his hand and gestured to the back of his own head. The brother also related to the jury the aftermath and the burning of the vehicle. The brother was arrested as an accessory after the fact and had no plea deal with the State.

A medical examiner testified that the gunshot was the cause of death, and she also explained the trajectory of the bullet. The entrance wound was in the back of the head, slightly on the right side, with a trajectory of back to front, right to left, and slightly upward. She could not tell the distance between the gun and the head because of the damage caused by the fire to the body.

The State also presented evidence tracking the cell phones of both Morales and Colin during the day preceding and the day of the homicide. The detective who first interviewed Morales testified to his statements, including his denial of involvement.

After the State presented its case, Morales moved for acquittal in part on the grounds that the evidence did not show that Morales shot Colin with a depraved mind without regard for human life sufficient to support the charge of second degree murder. The State argued that, taking the evidence in the light most favorable to the State, the evidence was

consistent with second degree murder. The judge denied the motion for judgment of acquittal.

Morales testified in his case and presented his self-defense claim with testimony similar to what he gave at the Stand Your Ground hearing. He added that during the struggle in the car, he did not pull the trigger on the gun; rather, Colin's hand was still on the gun when it went off. He told the jury that he disposed of the body because he was scared of going to jail.

The ballistics expert who testified at the Stand Your Ground hearing also testified at trial. He told the jury that the trajectory of the bullet ruled out an execution-style shooting. The bullet was going from the base towards the upper part of the head. Either the firearm was tilted upwards while the head was looking forward, or the head was tilted down while the firearm was pointing parallel towards the ground and anywhere in between. He could not rule out that the shooting was done in self-defense.

During cross-examination, the prosecutor conducted a demonstration with two chairs and a toy gun. The expert sat in the "driver's seat" and the prosecutor sat in the "passenger seat." Unfortunately, the description of the demonstration in the record does not permit an accurate assessment of what it showed. The expert did opine that it was not impossible for the gun to be shot in the back of the victim's head during the struggle. The prosecutor, on the other hand, pointed out that the gunshot entry wound would not have occurred where it did based upon Morales's explanation of the struggle.

The jury ultimately returned a verdict of guilty as charged. The court sentenced Morales to fifty years on second degree murder with a twenty-five year mandatory minimum for the use of the firearm, fifteen years for arson, and five years for tampering with physical evidence. All sentences run concurrently. Morales then appealed his judgment and sentence.

We review the denial of the motion for judgment of acquittal de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). An appellate court will not reverse a conviction supported by competent substantial evidence. *Id.*

Although Morales contends that the special standard of review for circumstantial evidence cases should apply, we disagree. In *Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016), the court clarified when the special standard of review applied:

We now expressly hold that the circumstantial evidence standard of review applies only where all of the evidence of a defendant's guilt—i.e., the evidence tending to show that the defendant committed or participated in the crime—is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence.

Here, there was direct evidence showing that defendant committed the crime. His own brother testified that Morales told him he killed Colin and indicated he shot him in the head. In fact, there was no dispute that Morales was responsible for the shooting. Because there is direct evidence of Morales's involvement, the circumstantial review standard does not apply.

In this case, to prove second degree murder, the State was required to show: (1) the victim is dead; (2) the death was caused by the criminal act of the defendant; and (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Fla. Std. Crim. Jury Instr. (Crim.) 7.4; § 782.04(2), Fla. Stat. (2014). For second degree murder, an act or series of acts is considered "imminently dangerous" and demonstrating a "depraved mind" if it is an act that:

(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and (2) is done from ill will, hatred, spite or an evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life.

*Clark v. State*, 207 So. 3d 1019, 1022 (Fla. 4th DCA 2017) (citing *Wiley v. State*, 60 So. 3d 588, 591 (Fla. 4th DCA 2011)).

The State presented competent substantial evidence in its case in chief of each element of the crime. The victim Colin died as a result of a gunshot to the back of his head. That fact was undisputed. Colin and Morales had an adversarial relationship, and Colin had threatened Morales and his family in the past. Such evidence shows ill will between the parties. Colin was killed in an isolated area. Later, his body was burned in his vehicle. These facts, and the inferences which may be drawn from them, establish an act imminently dangerous—shooting the victim in the head—and done with ill will, hatred or spite.

The State must also have rebutted Morales's self-defense claim. Morales testified that Colin pointed a gun at him, and Morales attempted

6

to prevent Colin from shooting him.  In the struggle, the gun went off, killing Colin.  Morales claims that his testimony is unrefuted, and the State could not rebut it.  We disagree.

> [E]ven when there are no other witnesses to the events besides the defendant, a jury is not required to accept the defendant's testimony in support of [his or] her self-defense theory as true.  Instead, it must consider the probability or improbability of the defendant's credibility in light of the circumstances established by other evidence.

*Leasure v. State,* 105 So. 3d 5, 14 (Fla. 2d DCA 2012) (citations omitted).

Taken in the light most favorable to the State, considering all the circumstances, the evidence refutes Morales's claim of self-defense.  Colin was killed in a remote location where no other witnesses were present.  The testimony of the medical examiner, that the gunshot wound entrance was on the right side of the head, rebutted Morales's explanation of how the struggle concluded with a gunshot to Colin's head.  Morales's testimony would have placed the gun shot on the left side of Colin's head.  Nor did his demonstration show that Colin would have been shot in the very back of his head if both of them were struggling with the gun when it went off.  Further, Morales's conduct after the murder does not comport with his contention that he was justified in killing Colin in self-defense.  When he told his brother he killed Colin, he did not state that he was acting in self-defense, or even that he had struggled with the victim.  He did not call the authorities.  Instead, he and his brother drove to a remote location and burned the vehicle and body, thus implying that he wanted to eliminate any evidence.  Moreover, when he was questioned by a detective, he denied being involved at all.  A jury could infer from the evidence the improbability of Morales's credibility and his claim of self-defense.  For these reasons, the trial court correctly denied the motion for judgment of acquittal.

Similarly, the trial court did not err in denying the motion to dismiss pursuant to sections 776.032 and 776.12, Florida Statutes (2014), the "Stand Your Ground Law".  The court's findings are "presumed correct" and will be upheld if supported by competent substantial evidence.  *Arauz v. State,* 171 So. 3d 160, 161-62 (Fla. 3d DCA 2015).  The trial court heard Morales's description of how the gun went off, including his demonstrating what occurred.  The court found it "physically impossible" for the incident to have happened as testified to by Morales, so much so that the court did not require the State to put on its other evidence.  Given the facts

presented, the trial court had competent substantial evidence to support the denial of the motion.

We affirm as to the remaining issues raised, in which Morales contests the admission of photographs due to their gruesome nature. The photographs were used by the medical examiner in her testimony. A photo is admissible if it illustrates the testimony of a witness or assists the jury in understanding the testimony. *Henderson v. State*, 463 So. 2d 196, 200 (Fla. 1985).

For the foregoing reasons, we affirm the conviction and sentence.

TAYLOR and LEVINE, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***

8