DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TRAVIS L. GORDON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2653

[December 11, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312015CF001562A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Travis Gordon appeals from his convictions on two counts of attempted first-degree murder with a weapon. We affirm Appellant's convictions in all respects, finding no error in any of the issues raised on appeal. We write to address Appellant's arguments that the trial court erred (1) in failing to conduct a hearing to independently determine Appellant's competency to stand trial, and (2) in denying Appellant's motion for judgment of acquittal of the attempted first-degree murder charges which was premised on the claim that the State failed to present sufficient evidence of premeditation.

**Background**

On the day of the incident, Appellant and victims Williams and Simmons had spent several hours socializing together at Williams' home. At some point Appellant asked to use the bathroom and walked towards Williams who was sitting on the couch. When he got close to Williams, Appellant stopped and, seemingly unprovoked, directed an expletive at

Williams before pulling a knife from his back pocket and stabbing Williams more than eighteen times. Appellant did not stop attacking Williams until Simmons pulled Appellant off of him, giving Williams the opportunity to run for the door. A neighbor eventually found Williams in the street, where he had collapsed.

Meanwhile, inside the house, Appellant turned to Simmons and exclaimed, "I'll do it to you too, I'll kill you," before stabbing Simmons in his side numerous times. Simmons tried to defend himself and eventually escaped from the house and ran to a neighbor's residence, where he waited for police. As a result of the attack, Williams lapsed into a coma and spent four months in the hospital, where he underwent eight surgeries and numerous blood transfusions.

## A. Appellant's Insanity Defense

Before trial, defense counsel timely filed a notice of intent to rely on the insanity defense, in compliance with Florida Rule of Criminal Procedure 3.216(b). In the notice, defense counsel asserted that Appellant "had been examined by [a mental health expert] and that the defense was expected to prove at trial through the testimony of [the expert] that [Appellant] was laboring under a mental disease, infirmity or defect *at the time of the alleged offense*" (emphasis added).

In response to the defense's notice, the State filed a "Motion to Appoint Mental Health Experts." The State expressly stated in the motion that the motion was filed pursuant to Rule 3.216(d).

The State also attached to its motion a proposed form order granting the motion and appointing Dr. Landrum, another mental health expert, to examine Appellant. The proposed form order left blank a provision used in relation to claims of incompetency to stand trial under Rules 3.210(b) and 3.211(a).

The trial court granted the State's motion and appointed Dr. Landrum to evaluate Appellant's mental state. But instead of signing the State's proposed order, the court entered a different standard form order and filled in the provision related to incompetency and set a date for a competency hearing. However, the court never held this competency hearing and neither party objected nor expressed any concerns regarding Appellant's competency throughout the proceedings. After several continuances, the case eventually proceeded to trial.

*B. Trial*

At trial, the defense did not contest that Appellant had stabbed Williams and Simmons, seemingly out of the blue. Instead, it relied on the insanity defense, asserting that although Appellant had committed the crime, he was not legally responsible because he was a diagnosed paranoid schizophrenic and had experienced a psychotic break.

The defense introduced testimony of Dr. Tavis, a psychologist who had evaluated Appellant in preparation for trial. Dr. Tavis testified that during the mental status exam, Appellant was articulate and did not present himself as mentally ill. Instead, Appellant was eager to talk about his case and would often interrupt Dr. Tavis. The doctor testified that, to a reasonable degree of psychological certainty, Appellant "was psychotic, suffering from paranoid delusions *at the time of these events* and was therefore unable to appreciate the nature and quality of the offense that he was doing" (emphasis added).

Similarly, the State's rebuttal witness, forensic psychologist Dr. Landrum, testified that he was appointed to "opine with regard to [Appellant's] mental state at the time of the offense, his legal sanity at the time of the alleged offense. . . . [T]o evaluate him, review all the records and to render an opinion if I could regarding his mental state at the time of the offense." Dr. Landrum testified that Appellant was precise and articulate at the time of the examination. Dr. Landrum's "expert opinion" was that Appellant was "voluntarily intoxicated" at the time of the stabbings by manner of abuse of alcohol and drugs (Appellant had admitted regular use of flakka), resulting in "extreme delirium."

At the close of the evidence, the defense moved for a judgment of acquittal on the grounds that because Appellant's actions were spontaneous, unprovoked, and out of character, the State had not proven he acted with premeditation to support a finding of attempted first-degree murder. The trial court denied the motion and submitted the case to the jury. The jury found Appellant guilty of both counts of attempted first-degree murder with a weapon, and the trial court imposed concurrent life sentences.

## Analysis

*A. The trial court was not required to hold a competency hearing absent any evidence of Appellant's incompetency at the time of trial.*

On appeal, Appellant maintains that the trial court erred in failing to

3

hold a hearing on Appellant's competency to stand trial after ordering that he be examined by mental health experts in response to his notice of intent to rely on the insanity defense.

Appellant did not move for a hearing to determine his competence to stand trial, nor did he otherwise raise any competency objections before or during trial. "But, nowhere in Rule 3.210 does it allow a waiver of the hearing in the first place, and case law clearly requires a competency hearing and order whenever a competency concern arises." *Raithel v. State*, 226 So. 3d 1028, 1032 (Fla. 4th DCA 2017) (citations omitted); *see also Monte v. State*, 51 So. 3d 1196, 1202 (Fla. 4th DCA 2011) ("[O]nce the trial court has reasonable grounds to believe that a criminal defendant is not competent to proceed, it has no choice but to conduct a competency hearing.").

In support of his contention that the trial court was required to hold a competency hearing, Appellant focuses on the court's order requiring mental health experts evaluate Appellant and setting a date for a competency hearing. However, such reliance is misplaced because regardless of the language used in the order, the record indicates that the court ordered experts to examine Appellant's mental health as part of Rule 3.216's procedures governing *insanity*, rather than based on a concern about Appellant's competency. At trial, both Drs. Tavis and Landrum testified that the court appointed them to evaluate whether Appellant was insane *at the time of the offense*; neither expert mentioned a directive to evaluate Appellant's competency under Rule 3.210 to proceed to trial.

Furthermore, as we recently reiterated:

> a court does not err when it fails to conduct an inquiry into a defendant's competency without evidence of incompetency. *See, e.g., Castillo v. State*, 244 So. 3d 1098, 1103 (Fla. 4th DCA 2018) (quoting *Campo v. State*, 24 So. 3d 735, 736 (Fla. 3d DCA 2009)). We have also explained that a court does not have an independent obligation to hold a competency hearing "if there is nothing to alert the court" that the defendant lacks competency. *Blackmon v. State*, 32 So. 3d 148, 150 (Fla. 4th DCA 2010) (citation omitted).

*Thomas v. State*, 274 So. 3d 1100, 1101 (Fla. 4th DCA 2019).

The record is devoid of evidence that the trial court had a reason to question Appellant's competency to stand trial. Neither the defense nor the State moved for a competency hearing or raised any concerns about

4

Appellant's competency to stand trial. Nor was there evidence that Appellant had been previously adjudicated incompetent. None of the mental health reports or testimony elicited at trial indicated to the trial court that Appellant could not understand the nature of the proceedings against him or communicate with counsel. To the contrary, both Drs. Tavis and Landrum testified that after speaking with Appellant, they found that he was competent to proceed and willing to articulately discuss his case with them and understand the charges against him. *See Blackmon,* 32 So. 3d at 150.

The fact that a defendant intends to rely on the insanity defense, standing alone, does not raise a presumption that the defendant is incompetent to stand trial. "[W]hether a defendant is competent to stand trial is not necessarily relevant on the question of whether the defendant was insane at the time of the killing. Competency to stand trial and insanity at the time of the offense involve the defendant's mental state at separate and distinct points in time." *Patton v. State,* 784 So. 2d 380, 387 (Fla. 2000); *see also State v. Tait,* 387 So. 2d 338, 340-41 (Fla. 1980) ("The judge's knowledge of results of examinations ordered in connection with the defendant's reliance on the defense of insanity may or may not give rise to reasonable doubt of his competence to stand trial.").

As the trial court had no reason to question Appellant's competency to stand trial, we find no error with the failure to hold a competency hearing.

*B. There was competent substantial evidence to support a finding of premeditation.*

Appellant argues the trial court erred in denying his motion for judgment of acquittal because the State presented insufficient evidence to support a finding of premeditation. Appellant submits that the evidence showed he could not have formed the conscious and definite purpose to kill required for premeditation because he attacked Walters and Simmons as the result of a psychotic break, seemingly out of nowhere and without warning or provocation. He further contends that the evidence of his participation in the attack was entirely circumstantial, and therefore, the special standard of review applicable to circumstantial evidence cases applies.

In *Pagan v. State,* the Florida Supreme Court set forth this court's standard of review:

> In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will

5

not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. However, if the State's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence.

830 So. 2d 792, 803 (Fla. 2002) (internal citations omitted).

In *Knight v. State,* the Florida Supreme Court clarified that the special standard of review applies "only where all of the evidence of a defendant's guilt . . . is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence." 186 So. 3d 1005, 1010 (Fla. 2016); *see also Morales v. State*, 251 So. 3d 167, 171 (Fla. 4th DCA 2018) (quoting *Knight* and holding that, because there was testimony that the defendant had implicated himself in the murder at issue, the circumstantial review standard did not apply). This case was not an entirely circumstantial evidence case as both victims testified that Appellant attacked them, and Appellant does not contest his involvement. On the contrary, by asserting the insanity defense, Appellant admitted he stabbed both men, but claimed he did so as the result of a psychotic break. Thus, the special standard of review does not apply. Instead, we review the trial court's denial of Appellant's motion for judgment of acquittal de novo, reversing only if the conviction is not supported by competent, substantial evidence. *Knight,* 186 So. 3d at 1012.

To prove the crime of attempted premeditated murder, the State must prove beyond a reasonable doubt that (1) the defendant did some act intended to cause the death of a victim that went beyond just thinking or talking about it; (2) the defendant acted with a premeditated design to kill the victim; and (3) the act would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or he otherwise failed to do so. *See* Fla. Std. Jury Instr. (Crim) 6.2; §§ 782.04(1)(a)1., 777.04(1), Fla. Stat. (2015).

With respect to the premeditation element, the Florida Supreme Court has stated that premeditation is more than a mere intent to kill, but a fully formed conscious purpose to kill. *Glover v. State*, 226 So. 3d 795, 805–06 (Fla. 2017). "Premeditation may be formed in a moment and need only exist for such a time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." *Id.*

Further, premeditation can be shown by circumstantial evidence. *Id.* In a homicide case, "evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the [crime] was committed, and the nature and manner of the wounds inflicted." *Id.* at 806 (citation omitted). In addition, use of a lethal weapon is sufficient to support a finding of premeditation where the victim did not provoke the attack and the wounds were inflicted immediately and at close range "and thus unlikely to have struck the victim unintentionally." *Alcott v. State,* 728 So. 2d 1173, 1175 (Fla. 4th DCA 1998).

Under this framework, competent substantial evidence supports the finding that Appellant formed a conscious purpose to kill Williams and Simmons. The State presented evidence that Appellant walked over to Williams, pulled a knife from his pocket, shouted an expletive at Williams, and then stabbed him more than eighteen times at close range before Williams escaped. Appellant then turned to Simmons and said "I'll do it to you, too. I'll kill you." The evidence also reflected that neither Williams nor Simmons provoked the attacks, but that the men had been sitting on the couch talking before Appellant attacked Williams. As the jury did in *Alcott,* here too, the jury could have inferred premeditation from Appellant's seemingly unprovoked use of a deadly weapon at close range.

Further, where the deadly weapon is a knife, the Florida Supreme Court has held that "[a]lthough multiple stab wounds alone do not prove premeditation," "the deliberate use of a knife to stab a victim multiple times in vital organs, alone, is evidence that can support a finding of premeditation." *Perry v. State,* 801 So. 2d 78, 85-86 (Fla. 2001) (holding that seven wounds (four of which were fatal) to the victim's chest and neck, "both areas where an attack would produce grievous wounds," supported a premeditation finding); *see also Morrison v. State,* 226 So. 3d 795 (Fla. 2017) (finding, in a case involving two major knife wounds to the victim's neck, the jury was amply justified in finding premeditation). Thus, where Appellant used a knife to stab Williams and Simmons numerous times— an attack that "would produce grievous wounds"— the nature and number of the wounds inflicted could support a jury finding of premeditation. *See Perry,* 801 So. 2d at 85-86; *Hampton v. State,* 103 So. 3d 98, 119 (Fla. 2012).

In short, based on the trial evidence, the jury could have found that Appellant had a fully formed conscious purpose to kill when he repeatedly stabbed the victims. Accordingly, there was competent substantial

evidence of premeditation and the trial court did not err in denying the motion for a judgment of acquittal.

## Conclusion

We find no error in the trial court's failure to hold a hearing on Appellant's competency to stand trial because the court ordered Appellant's mental health evaluation in response to his notice of intent to rely on the insanity defense, and in compliance with Rule 3.216, rather than based on a concern for Appellant's ability to stand trial under Rule 3.210 procedure. Where neither party raised any competency objections before or during trial, the trial court did not have reasonable grounds on which to order a competency hearing on its own. We further find no error in the trial court's denial of Appellant's judgment of acquittal because the State introduced competent substantial evidence to support a finding of premeditation. The judgment and sentence rendered by the trial court are affirmed.

*Affirmed.*

CIKLIN and GERBER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

8