489 So.2d 734 (1986)
Oscar MASON, Appellant,
v.
STATE of Florida, Appellee.
No. 67101.
Supreme Court of Florida.
June 12, 1986.
*735 Luis Prats of Blasingame, Forizs & Smiljanich, St. Petersburg, for appellant.
Jim Smith, Atty. Gen. and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
ADKINS, Justice.
Oscar Mason, who is under a sentence of death, appeals the trial court's denial of his motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We previously granted Mason's motion for a stay of execution in order to afford this Court an opportunity to adequately assess the issues raised in this proceeding. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We remand the case to the circuit court for an evidentiary hearing as to the adequacy of earlier determinations of Mason's competency in light of additional and extensive psychological evidence which may not have been considered by the examining psychiatrists.
The facts of the case and the issues raised on direct appeal are contained in this Court's decision of Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). In seeking relief under rule 3.850, appellant raises ten issues, several of which either were or could have been considered on direct appeal and are therefore now barred from consideration. Goode v. State, 403 So.2d 931 (Fla. 1981). At any rate, in light of today's holding, we need reach only the first issue as dispositive. We agree that the cause must be remanded in order to resolve the question, raised by the evidence proffered, of whether Mason's due process rights have been protected through valid evaluations of his competency.
While a hearing as to Mason's competency was never held below, we cannot here order on that basis a per se reversal for a new trial as we did in Hill v. State, 473 So.2d 1253 (Fla. 1985). In Hill, applying the United States Supreme Court precedent of Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1965); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); and Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), we rejected the state's contention that "there was no evidence before the court that was sufficient to raise a bona fide doubt as to Hill's competency to stand trial." 473 So.2d at 1259.
On the facts of the instant case, however, we cannot find that any such sufficient evidence existed to compel a competency hearing. Two psychiatrists, examining Mason in connection with an earlier attempted first-degree murder charge, found him both competent at the time of that offense and presently competent. These evaluations were based on interviews conducted on March 10 and 11, about a week prior to the commission of the murder for which Mason was sentenced to death.
*736 Prior to the trial on the murder charge below, defense counsel received reports from an interviewer that Mason appeared "feeble minded," and obtained certain medical records previously compiled at St. Joseph's Hospital. Because these records raised a doubt as to Mason's mental capacity, defense counsel asked the court to appoint psychiatrists to evaluate Mason's competence at the time of the offense and at trial. At that point, one of the doctors who had earlier examined Mason again found him competent, and a third doctor opined that Mason was competent to stand trial and had been competent at the time of the offense. With this information in hand, we cannot find that defense counsel had a duty to request a competency hearing. In fact, he lacked any evidence indicating the need for such a procedure.
Because Mason has since proffered significant evidence of an extensive history of mental retardation, drug abuse and psychotic behavior which were not uncovered by defense counsel, and because a possibility exists that this evidence was not considered by the evaluating psychiatrists, however, we must remand for a hearing on whether or not the examining psychiatrists would have reached the same conclusion as to competency had they been fully aware of Mason's history.
Appellant Mason proffered records and other evidence suggesting the following psychiatric history, previously uncovered by defense counsel. Mason, born to an anemic mother unable to buy necessary medicines, suffered several illnesses and injuries during his childhood. Unable to communicate well, he would repeatedly bang his head into a wall when frustrated. At a very young age he was taken to a "special child doctor who placed him on medication." As a child, Mason began inhaling gas to "get high." Mason's life has since been marked by the usage of a spectrum of psychotropic drugs including Stellazine, Mellaril, Thorazine, Cogentin, Moban, Ativan and Chloral Hydrate.
In 1972, at the age of twelve and a half years, Mason was tested as having the intellectual ability of a five-year-old child, and found eligible for programs for the trainable mentally retarded. An evaluation conducted that year at Lake Magdaline Juvenile Home indicates that "Oscar appears to fantasize and `sees things' around him others don't see." In 1976, a resident of the Hillsborough Community Mental Health Center noted that "most of the time [Mason] has a frontal headache, apparently relating to the occipital region, followed by nervousness, irritability and thus explained (sic) why he yells."
At the Hillsborough Correctional Institution, a psychologist concluded that "projective tests indicated possible brain damage." Found suicidal, Mason was at that point transferred to a psychiatric ward. in 1979, while in jail, Mason received a blow to the head which knocked him unconscious. A psychiatric social worker at the Health Center noted that after the head injury, Mason had headaches, dizziness, heard voices, and had difficulty remembering. His family called him crazy.
In February 1980, Mason's mother attempted to have him involuntarily committed under the Baker Act. The petition reflects a diagnosis of "schizophrenia-paranoid type" as evidenced by "poor reality testing, incoherence. Considered dangerous to self and others." That month a doctor diagnosed his condition as "mental retardation with psychosis." Apparently the Baker Act hearing was never held, and the month before the murder Mason was discharged, his final diagnosis being "schizophrenic, chronic paranoid type with depression and suicide attempt, treated, improved."
A crucial issue on remand, of course, will be the source of the examining psychiatrists' information utilized in their evaluations of competency. Dr. Gonzalez, one of the later interviewers, cited his reliance on a "County Hospital Chart" and an interview. Since no other documents are cited in the other interviewer's reports, too great a risk exists that these determinations of *737 competency were flawed as neglecting a history indicative of organic brain damage.
Commentators have pointed out the problems involved in basing psychiatric evaluations exclusively, or almost exclusively, on clinical interviews with the subject involved. One of the earlier interviewing psychiatrists noted in his report that Mason was "extremely hostile, guarded, indifferent and generally gave an extremely poor history in regard to dates, symptoms ... etc." In light of the patient's inability to convey accurate information about his history, and a general tendency to mask rather than reveal symptoms, an interview should be complemented by a review of independent data. See Bonnie, R. and Slobogin, C., The Role of Mental Health Professionals in the Criminal Process: The Case for Informed Speculation, 66 Va.L Rev. 427, 508-10 (1980).
In spite of the problems involved in conducting a nunc pro tunc competency evaluation so well enunciated in Hill, we find that under these circumstances the "court may find that there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing." Martin v. Estelle, 583 F.2d 1373, 1375 (5th Cir.1979). The experts here will not have to rely upon a cold record or recent examination of the appellant, and the chances are therefore decreased that such a nunc pro tunc evaluation will be unduly speculative. United States v. Makris, 398 F. Supp. 507 (S.D.Tex. 1975), aff'd 535 F.2d 899 (1976), cert. denied, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).
We agree with the First District Court of Appeal's observation in State v. Williams, 447 So.2d 356 (Fla. 1st DCA 1984), that no per se rule exists in Florida forbidding a nunc pro tunc competency determination regardless of the surrounding circumstances. See also Brown v. State, 449 So.2d 417 (Fla. 3d DCA 1984) (remanding for nunc pro tunc evaluation when original experts available to testify). Should the trial court find, for whatever reason, that an evaluation of Mason's competency at the time of the original trial cannot be conducted in such a manner as to assure Mason due process of law, the court must so rule and grant a new trial.
The cause is reversed and remanded for further proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.