# Third District Court of Appeal

## State of Florida

Opinion filed December 26, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1758
Lower Tribunal No. 09-31001

_____

**Adonis Losada,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Keri T. Joseph, Assistant Attorney General, for appellee.

Before LAGOA, LOGUE, and SCALES, JJ.

LAGOA, J.

Adonis Losada ("Losada") appeals his final judgment of conviction and sentence, arguing that a new trial is required as the trial court erred on two separate

grounds. Specifically, Losada contends that the trial court erred by (1) failing to make an independent determination of Losada's competency to stand trial at his competency hearing and (2) failing to apply the correct legal standard in determining that Losada was not competent to waive his Sixth Amendment right to counsel. For the reasons discussed below, we agree on both grounds and reverse.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2009, Detective Charles Ramos ("Ramos"), a Special Investigator for the Palm Beach State Attorney's Office, was working in an undercover capacity in an online chatroom primarily used by individuals seeking to have sexual relations with young children when Losada sent an image of child pornography from his computer to Ramos in Palm Beach County. On September 14, 2009, Losada again sent numerous images depicting child pornography to Ramos. After tracking the IP address of Losada's computer, the Miami Beach Police Department executed a search warrant on Losada's Miami Beach apartment and seized his computer. Additional images depicting child pornography were found on Losada's computer.

Losada was charged in Miami-Dade County with numerous counts of possession and transmission of materials depicting sexual performance by a child in violation of sections 827.071(5) and 775.0847(2)-(3), Florida Statutes (2009).[1]

---

[1] Losada was initially charged with sixteen counts of possession and transmission of said materials, but the Assistant State Attorney amended the information on March 23, 2012, to include additional charges for a total of fifty-two counts.

2

Losada was also charged in Palm Beach County in case number 2009CF11930AXX (the "Palm Beach action"), with charges arising from the same undercover investigation.[2] In October 2012, during the proceedings of the Palm Beach action, the Palm Beach circuit court found Losada not competent to proceed to trial based on a report written by Dr. Jeff Dalia ("Dr. Dalia"). On October 22, 2013, the trial court in the instant case relied upon Dr. Dalia's report to adjudicate Losada incompetent to stand trial below.[3]

After several experts appointed by the Palm Beach circuit court found Losada was restored to competency, Losada was returned to the Palm Beach County jail. After the Palm Beach circuit court concluded that Losada was restored to competency, trial in the Palm Beach action commenced in January 2014. At the conclusion of that trial, Losada was found guilty and received a sentence of ten years. See State v. Losada, 175 So. 3d 911, 912, 915 (Fla. 4th DCA 2015) (affirming Losada's conviction and sentence).

Losada was subsequently transferred to Miami-Dade County, where the trial court ordered the appointment of two psychologists—Dr. Laura Artiles ("Dr. Artiles") and Dr. Merry Haber ("Dr. Haber")—to evaluate Losada's competency to

---

[2] Nearly two years after he was charged in Palm Beach County, Losada moved to transfer venue to Miami-Dade County to consolidate his charges. Although the Palm Beach circuit court granted Losada's motion, this Court granted the State's petition for writ of certiorari to reinstate the information filed in Palm Beach County. See State v. Losada, 89 So. 3d 1104, 1107 (Fla. 3d DCA 2012).

[3] The trial court entered this order nunc pro tunc to December 12, 2012.

3

proceed to trial and to waive his right to counsel in the instant case. Dr. Artiles and Dr. Haber opined in separate, written reports dated October 31, 2013, and November 14, 2013, respectively, that Losada was competent to proceed to trial. Neither psychologist made any finding that Losada suffered from "any cognitive or mental impairment" or "major mental illness."

At a December 3, 2013, pretrial status hearing, defense counsel for Losada stated that: "[Losada has] been evaluated by two different doctors. At this time both finding that he is competent. I will stipulate to the reports." Based upon the defense counsel's stipulation to the expert reports, the trial court found Losada competent to proceed to trial. The trial court neither issued a written order on its competency determination nor indicated that it had reviewed the reports.

At the same hearing, Losada requested to waive his counsel and represent himself at trial. On December 5, 2013, the trial court conducted a <u>Faretta</u> hearing,[4] where Losada, a non-native English speaker, was assisted by the court interpreter. At the beginning of the <u>Faretta</u> hearing, Losada stated he was "making a waiver of [his] rights to standby counsel." The trial court then had the following exchange with Losada during the <u>Faretta</u> colloquy:

> THE COURT: . . . Mr. Losada, is it your desire to represent yourself at trial?
>
> THE DEFANDANT: I invoke my right to be represented without anybody speaking for me in this courtroom.

---

[4] See <u>Faretta v. California</u>, 422 U.S. 806 (1975).

THE COURT: So do you intend to represent yourself?

THE DEFENDANT: I do not know what that is called, your Honor. I simply, if you need to talk to me it's going to be me. All decisions and actions to be taken will be taken by me, under my own responsibility.

THE COURT: Here is my question, are you going to hire another lawyer?

THE DEFENDANT: I am waiving my right to standby counsel.

THE COURT: I didn't ask you that. I asked you if you're going to hire another lawyer. I'm asking for that now.

THE DEFENDANT: I can not hire any other lawyer because I am in jail.

THE COURT: Thank you. Thank you.

THE DEFENDANT: You're not letting me answer, your Honor.

THE COURT: Thank you. Would you like me to appoint another lawyer for you?

THE DEFENDANT: No.

THE COURT: So you want to represent yourself?

THE DEFENDANT: I do not know what's that called, your Honor. I'll make my decisions by myself. Any decision will be my decision. Any action will be my own action and I repeat that I want to exercise my right to remain silent.

The trial court then asked Losada if he understood the nature of the crimes of which he was charged and their potential sentences, explained that counsel would

5

be appointed if Losada could not afford a lawyer, and warned of the risks of self-representation. The trial court reserved ruling on Losada's request.

On March 5, 2014, the trial court denied in a written order Losada's request to represent himself, finding that: (1) Losada suffered from "severe mental illness"; (2) Losada's waiver was not unequivocal due to "wildly bizarre" "answers to straightforward questions" during the hearing; and (3) the Sixth Amendment does not guarantee self-representation to a defendant who "refuses to defend himself." In its written order, the trial court specifically found that Losada's "bizarre or self-destructive behavior," e.g., refusing to eat, to communicate with staff, or to take his medications, and being placed on suicide watch, throughout the proceedings of the Palm Beach trial was evidence of severe mental illness. The trial court also expressed concerns that failing to appoint counsel to Losada would not "preserve the orderly and dignified nature of the proceedings," rendering them "a 'trial' in name only." The trial court subsequently appointed the Public Defender's Office to represent Losada.

In April 2016, the case proceeded to trial. The jury found Losada guilty on fifty-one of the counts,[5] and the trial court sentenced Losada to a term of imprisonment of three years for each count to run consecutive with the conviction

---

[5] The State nolle prossed Count 31 in the amended information.

in the Palm Beach trial for a total of 153 years in state prison.[6]  This timely appeal ensued.

## II.   STANDARD OF REVIEW

We review a trial court's determination of whether a defendant is competent to stand trial for an abuse of discretion.  McCray v. State, 71 So. 3d 848, 862 (Fla. 2011).  "A trial court's decision regarding a determination of competency is subject to review for abuse of discretion, and the trial court's resolution of factual disputes will be upheld if supported by competent, substantial evidence."  Larkin v. State, 147 So. 3d 452, 464 (Fla. 2014).  An abuse of discretion occurs when "the trial court applie[s] the incorrect legal standard" in assessing whether a defendant is not competent to waive his right to counsel.  Loor v. State, 240 So. 3d 136, 142 (Fla. 3d DCA 2018); see also Williams v. State, 163 So. 3d 694, 697 (Fla. 4th DCA 2015).

## III.   ANALYSIS

On appeal, Losada argues that the trial court abused its discretion on two grounds: (1) by not making an independent determination of his competency to stand trial; and (2) by denying his request to waive counsel and exercise his right to self-representation.  We agree on both grounds.

### A.    Losada's Competency to Stand Trial

---

[6] The conviction and sentence in the Palm Beach trial became final in 2015.  See State v. Losada, 175 So. 3d 911 (Fla. 4th DCA 2015).

7

The U.S. Supreme Court has long "recognized that 'the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.'" Dougherty v. State, 149 So. 3d 672, 676 (Fla. 2014) (quoting Drope v. Missouri, 420 U.S. 162, 172 (1975)).  Florida Rule of Criminal Procedure 3.210(a) provides that "[a] person accused of an offense . . . who is mentally incompetent to proceed at any material stage of a criminal proceeding shall not be proceeded against while incompetent."  If there is "reasonable ground to believe that the defendant is not mentally competent to proceed," the trial court, on either its own motion or on motion of parties' counsel, shall set "a hearing to determine the defendant's mental condition" and "may order the defendant to be examined by no more than 3 experts."  Fla. R. Crim. P. 3.210(b).  In evaluating the defendant's competence to stand trial, the appointed experts shall consider "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings."  Fla. R. Crim. P. 3.211(a)(1).

After the competency hearing, the trial court must make its own "independent legal determination regarding whether the defendant is competent, after considering the expert testimony or reports and other relevant factors." Shakes v. State, 185 So. 3d 679, 682 (Fla. 2d DCA 2016); accord Fla. R. Crim. P.

8

3.212(b) ("The court shall first consider the issue of the defendant's competence to proceed. If the court finds the defendant competent to proceed, the court shall enter its order so finding and shall proceed."). The experts' written reports are only advisory to the court, as the trial court retains ultimate responsibility for determining the defendant's competence. See Dougherty, 149 So. 3d at 678 (noting that the purpose of expert reports is "'to aid and assist the Court, so as to enable the Court wisely to determine'" a defendant's competence (quoting Brown v. State, 245 So. 2d 68, 71 (Fla. 1971), vacated in part on other grounds, 408 U.S. 938 (1972))). Indeed, "[e]ven in a situation where all the experts opine that a defendant is competent, the trial court could presumably disagree based on other evidence such as the defendant's courtroom behavior or attorney representations." Id.

Conversely, a trial court cannot adjudicate a defendant competent solely based on the parties' stipulation, as it "improperly absolves the trial court from making an independent determination" of competency. Id.; see also Rumph v. State, 217 So. 3d 1092, 1094 (Fla. 5th DCA 2017) ("The parties may stipulate to deciding competency based on the written expert reports rather than live expert testimony, but the defendant and the other parties may not stipulate to competency itself, . . . as the trial court must make an independent determination on the issue."). Indeed, Florida appellate courts consistently reverse competency findings when it is not clear from the record whether the trial court read the expert reports

9

before accepting a stipulation of a defendant's competency based on those reports. See, e.g., Rumph, 217 So. 3d at 1095-96 ("One requirement of a proper [competency] hearing is that the trial court actually reviews the expert reports and other evidence."); Presley v. State, 199 So. 3d 1014, 1018-19 (Fla. 4th DCA 2016) ("In fact, it is unclear from the record whether the trial court actually reviewed the expert's report declaring appellant competent to proceed."); Zern v. State, 191 So. 3d 962, 965 (Fla. 1st DCA 2016) ("The record in this case establishes that the trial court relied on the stipulation of defense counsel and the preponderance of the experts' ultimate opinions to make its competency determination, without having read all the evaluations. It does not show an independent finding."); Shakes, 185 So. 3d at 681 ("[T]he trial court did not . . . make an independent determination of competency . . . [and] gave no indication that it had reviewed the report submitted by the psychologist.").

A review of the record establishes that the trial court did not make an independent legal determination as to whether Losada was competent to stand trial. Rather, the trial court relied on defense counsel's stipulation to the expert reports of Dr. Artiles and Dr. Haber finding Losada competent without giving any indication that it had reviewed the expert reports. Moreover, no written order finding competency was ever issued. See Shakes, 185 So. 3d at 682 ("In addition, the trial court never entered a written finding of competency, further indicating that the trial court did not make an independent competency determination."). Because

10

the issue of a defendant's competency "is a legal question and not a medical question," we find that the trial court abused its discretion by not making its own legal determination that Losada was competent to proceed to trial. See Dougherty, 149 So. 3d at 678.

Generally, the remedy for a trial court's failure to conduct a proper competency hearing is for the defendant to receive a new trial, if deemed competent to proceed on remand. Id. at 678-79. The State, however, contends that this Court should remand only for the trial court to conduct a nunc pro tunc competency hearing. It is true that there are situations where a new trial is unnecessary if the trial court can make a retrospective competency determination on remand, based on evidence available at the time of the trial. See id. at 679. Indeed, "a nunc pro tunc competency evaluation could be done where 'there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing.'" Id. (quoting Mason v. State, 489 So. 2d 734, 737 (Fla. 1986))). The trial court's focus, therefore, "must be on the defendant's mental state at the time of the proceeding in question, not at some time in the past, and stale mental health reports will not support an adjudication of incompetency." *In re* Commitment of Reilly, 970 So. 2d 453, 455 (Fla. 2d DCA 2007). As such, the "United States Supreme Court has cautioned that determining competency to stand

11

trial retrospectively is inherently difficult, even under the most favorable circumstances." Dougherty, 149 So. 3d at 679; see also Drope, 420 U.S at 183.

We find that the facts of this case will not support a retroactive determination of Losada's competency to proceed to trial. Significantly, the competency hearing was not contemporaneous with the trial. The trial court made its competency ruling in December 2013, but Losada did not go to trial until April 2016. Almost five years have passed since the competency hearing.

Moreover, as the Florida Supreme Court has concluded, "'[t]he chances of conducting a meaningful retrospective competency hearing decrease when experts must rely on a cold record.'" Dougherty, 149 So. 3d at 679 (quoting Jones v. State, 740 So. 2d 520, 523 (Fla. 1999)). The only evidence available to the trial court and any newly appointed experts in making a nunc pro tunc competency evaluation would be the 2013 reports of Dr. Artiles and Dr. Haber. However, neither of these doctors examined or observed Losada "contemporaneous with the trial," as the trial occurred in April 2016. As such, any retrospective competency hearing based on the 2013 reports of Dr. Artiles and Dr. Haber would not satisfy the Florida Supreme Court's requirement.

Additionally, in its written order denying Losada's request to waive counsel, the trial court repeatedly emphasized Losada's "bizarre or self-destructive behavior" while he was adjudicated incompetent by the Palm Beach circuit court, noting that Dr. Dalia found Losada suffered from "mental illness, specifically

12

psychosis NOS, catatonia." However, a review of the reports in the record appears to show Dr. Artiles and Dr. Haber were unaware of Losada's medical history or behavioral difficulties. Specifically, Dr. Artiles noted that Losada "denie[d] any history of mental illness or psychiatric treatment" while Dr. Haber noted that "Losada denied any psychiatric history; any history of psychiatric evaluation and/or any taking of psychotropic medication"—denials that were blatantly untrue.

The State contends that two recent Florida cases where the trial court remanded for a limited nunc pro tunc competency hearing or order apply to the instant case. We find these cases, however, distinguishable. In Sallee v. State, 244 So. 3d 1143 (Fla. 2d DCA 2018), the Second District Court of Appeal remanded for a nunc pro tunc order where "the record reflect[ed] that defense counsel explained the contents of the experts' reports," which had found the defendant competent, "defense counsel left it to the trial court to assess [the defendant's] competency based upon the reports," and the defendant was present in the courtroom. Id. at 1146. In the instant case, the trial court never received any explanation of the reports beyond defense counsel stating that they found Losada competent, Losada was not present at the competency hearing, and the competency determination occurred more than two years before trial.

In Saunders v. State, 242 So. 3d 1149 (Fla. 4th DCA 2018), the trial court failed to hold a competency hearing or make a competency determination at all. Id. at 1150. The Fourth District Court of Appeal remanded for a nunc pro tunc

competency determination *if possible*, i.e., "'if "a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial" are available.'" Id. at 1150-51 (quoting Silver v. State, 193 So. 3d 991, 993-94 (Fla. 4th DCA 2016)). The court, however, noted that "if the [trial] court finds . . . that an evaluation of [the defendant's] competency at the time of trial cannot proceed in a way that ensures [the defendant's] due process rights, then the court should adjudicate h[is] current competency and, if [he] is competent, conduct a new trial on all counts." Id. at 1151 (quoting Baker v. State, 221 So. 3d 637, 641-42 (Fla. 4th DCA 2017)). Given the facts in the instant case, we find that a nunc pro tunc competency determination would not ensure that Losada's constitutional due process rights are met, and a new trial is therefore warranted if Losada is deemed competent to proceed on remand See Dougherty, 149 So. 3d at 678-79.

B.      Losada's Request to Waive Counsel

Because we find that a new trial is warranted as a result of the trial court's failure to make an independent competency determination, we address the trial court's denial of Losada's request to waive counsel in the event Losada renews his request to waive his right to counsel. The Supreme Court has "held that the Sixth Amendment guarantees a criminal defendant the right to proceed without counsel when he 'voluntarily and intelligently elects to do so.'" Loor, 240 So. 3d at 139 (quoting Faretta v. California, 422 U.S. 806, 807 (1975)). "If a defendant prior to

14

trial makes an unequivocal demand to represent himself, the trial court must conduct a <u>Faretta</u> inquiry," i.e., "whether the defendant knowingly and intelligently waive[d] his constitutional right." <u>Rodriguez v. State</u>, 982 So. 2d 1272, 1274 (Fla. 3d DCA 2008). "When conducting a <u>Faretta</u> inquiry, the 'trial court should inquire into, among other things: defendant's age, mental status, and lack of knowledge and experience in criminal proceedings,' . . . the defendant must be made aware of the dangers and disadvantages of self-representation[,] and the trial court must determine that the defendant knowingly and intelligently waived his or her constitutional right." <u>Id.</u> (quoting <u>Johnston v. State</u>, 497 So. 2d 863, 868 (Fla. 1986)).

The Supreme Court subsequently qualified the Sixth Amendment right to self-representation recognized by <u>Faretta</u> in <u>Indiana v. Edwards</u>, 554 U.S. 164 (2008), holding that states may "insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from *severe mental illness* to the point where they are not competent to conduct trial proceedings by themselves." <u>Id.</u> at 175, 178 (emphasis added). In light of <u>Edwards</u>, the Florida Supreme Court adopted this limitation to the right to waive counsel in cases where a defendant suffers from severe mental illness. <u>See</u> Fla. R. Crim. P. 3.111(d)(3); <u>see also</u> *In re* Amendments to Fla. Rule of Criminal Procedure 3.111, 17 So. 3d 272, 272 (Fla. 2009).

As we discussed in <u>Loor</u>, "courts have narrowly interpreted what qualifies as severe mental illness." 240 So. 3d at 140; <u>e.g.</u>, <u>Larkin</u>, 147 So. 3d at 465-66. As a result, Florida courts have consistently reversed lower court efforts to bar self-representation without a finding of severe mental illness. <u>See, e.g.</u>, <u>Williams v. State</u>, 163 So. 3d 694, 698 (Fla. 4th DCA 2015) ("Nor did the court find that Defendant suffered from a 'severe mental illness' . . . so as to fall within the exception . . . in <u>Edwards</u>."); <u>Neal v. State</u>, 132 So. 3d 949, 951 (Fla. 1st DCA 2014) ("Nor did the trial court find that Mr. Neal suffered from 'severe mental illness' . . . so as to fall within the exception to the general rule explicated in <u>Edwards</u>."); <u>Thompson v. State</u>, 37 So. 3d 939, 940 (Fla. 2d DCA 2010) ("The record in this case contains nothing to suggest that Thompson fell within this exception to the general rule.").

Here, the record shows that the trial court applied the incorrect legal standard in denying Losada's request to waive counsel. First, the trial court did not rely on competent, substantial evidence to find that Losada suffered from severe mental illness. Neither Dr. Artiles nor Dr. Haber found evidence that Losada suffered from any mental illness at all, let alone severe mental illness. While the trial court found Losada's "bizarre or self-destructive behavior" during the Palm Beach action—refusing to eat, communicate, or take medication, and at one time, being placed on suicide watch—as evidence of severe mental illness, these actions alone do not rise to the level of severe mental illness. <u>See Loor</u>, 240 So. 3d at 140

16

(discussing cases where a defendant's actions or mental condition did not rise to the level of severe mental illness); see also United States v. Barajas-Cuevas, 492 F. App'x 745, 748 (9th Cir. 2012) (determining that the defendant's "perplexing" behavior and inability to present legal arguments did not constitute severe mental illness). The trial court also found significant Losada's apparent lack of defense in his self-representation at the trial of the Palm Beach action. This finding, however, is irrelevant to whether Losada suffered from severe mental illness. Indeed, a trial court may not inquire "into whether the defendant 'could provide himself with a substantively qualitative defense,' for it is within the defendant's rights, if he or she so chooses, to sit mute and mount no defense at all." State v. Bowen, 698 So. 2d 248, 251 (Fla. 1997) (quoting Bowen v. State, 667 So. 2d 863, 864 (Fla. 2d DCA 1996)); accord Hooker v. State, 152 So. 3d 799, 802 (Fla. 4th DCA 2014) ("The likelihood that a defendant would incompetently represent himself is not a valid reason to deny his unequivocal request for self-representation."); see also Muehleman v. State, 3 So. 3d 1149, 1160 (Fla. 2009).

The trial court further erred in finding that Losada's waiver was not unequivocal. Losada is neither an attorney nor possesses any legal education. He is not a native English speaker and had the assistance of a court interpreter at his Faretta hearing. Losada referring to the public defender as "standby counsel," and Losada not knowing the proper legal term for self-representation does not make his waiver equivocal. At the hearing, Losada made the following statements: (1) "I'm

17

making a waiver of my rights to standby counsel"; (2) "I make that decision voluntarily, intelligently"; (3) "I invoke my right to be represented without anybody speaking for me in this courtroom"; (4) "All decisions and actions to be taken will be taken by me, under my own responsibility"; (5) "I will waive the standby counsel"; (6) "I will take actions and decisions on my behalf"; (7) "I am not going to be represented by an attorney"; and (8) "I rather not have an attorney." Thus, we find that Losada knowingly and intelligently made an unequivocal waiver of his right to counsel.

Finally, as we noted in Loor, the trial court's concern that Losada's self-representation might turn the trial into a "street festival" and disturb "the orderly and dignified nature of the proceedings" is not a valid reason for the denial of his right to self-representation. See 240 So. 3d at 142. In addition, if Losada were to become disruptive in the courtroom, "the trial court has the power to terminate a defendant's self-representation if he continues to abuse the court system." McCray, 71 So. 3d at 868.

We, therefore, find that by failing to apply the legal standard set forth in Edwards and rule 3.111(d)(3), the trial court abused its discretion in denying Losada's request to waive counsel and to represent himself at trial.

IV.   CONCLUSION

Accordingly, we reverse Losada's conviction and sentence and remand for a new trial.   On remand, the trial court shall make an independent legal

determination on whether Losada is competent to proceed to trial. If the trial court determines Losada is competent to proceed, the trial court shall then conduct a proper <u>Faretta</u> inquiry if Losada renews his request to waive his right to counsel.

Reversed and remanded.